UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **v.** : | Case No. 1:22-cr-00366-001(CRC) |
| : | |
| **NICOLAS MONCADA,** : | |
| : | |
| **Defendant.** : | |

## DEFENDANT'S SENTENCING MEMORANDUM

The defendant, Nicolas Moncada, through his attorneys, Mario F. Gallucci, pursuant to Federal Rule of Criminal Procedure 32 and 18 U.S.C. Section 3553(a), respectfully submits this memorandum to aid the Court at sentencing and hereby notifies the Court that he has received and reviewed the Presentence Report ("PSR") prepared in this case. After carefully reviewing the PSR with Mr. Moncada, he has no objections or factual corrections. For the reasons set forth herein, Mr. Moncada requests that this Honorable Court impose a sentence of time served, and $500 restitution to account for:

1. His lack of need for incarceration, and
2. His non-destructive and non-violent behavior that day both outside and inside the Capitol building.

Mr. Moncada comes before the Court having plead guilty to a 1 count Information charging him with a violation of Title 40 U.S.C. §5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. A sentence of time served rather than additional incarceration of any period is a reasonable sentence that is "sufficient, but not greater than necessary" to address the sentencing factors and goals set forth in Title 18 U.S.C. § 3553(a). Under the facts of this case, such a sentence will protect the public, provide just punishment, and afford adequate deterrence.

1

1. **BACKGROUND**

At the time of this incident Nicolas Moncada was a twenty-year-old pizza delivery man going to graphic design school. He had no prior record or contact with the criminal justice system, including traffic violations. He entered a plea as soon as the government extended an offer and he has complied with all of his conditions of release. He expressed remorse about his presence at the Capitol immediately after the incident. Although he did post to social media as he was parading in the Capitol, he remarkedly, unlike almost every other January 6 defendant, he did not post or tweet anything afterwards. He was arrested on January 18, 2021, after the FBI raided his grandparents' home, where he and his mom reside. He was arraigned in the Eastern District of New York without incident. After the arraignment he was released on personal recognizance with pretrial supervision. He has cooperated with them and has not had one violation in over 2 years, complying with every request.

On January 6th he engaged in no violence or property destruction. As a matter of fact, during the incident he stopped an individual from destroying property in Nancy Pelosi's office. He did not erase his social media accounts. Although his conduct was ill informed and unlawful, it was neither aggressive nor hateful. He was never asked by anyone to leave the Capitol and informed me that the situation was fluid and chaotic as the Court can see by the numerous videos the Government has provided in these cases. He indicates to me he was more of an observer taking live videos of the scene as it unfolded and not participating in any way in the destruction or violence. He was not associated with any groups and went to the Capitol that day by himself. The situation was chaotic as the Court can see from the videos. This chaos and events from that day clearly clouded his judgment. He agreed with the statement of facts submitted by the government when he pleaded guilty.

After the presidential election, Donald Trump (hereinafter "Trump") and his inner circle began spreading the word that the election was "stolen" from him by Democrats and others. https://www.washingtonpost.com/politics/trump-election-voter-trust/2020/12/20/00282aa6-407a-11eb-8db8-395dedaaa036_story.html. False claims were made on media sources, as well as by the President himself, that the election system had been corrupted and that the integrity of the election should be questioned. While Mr. Moncada had been aware of the election integrity issues claimed by Trump, he did not consider himself to be political. As a matter of fact, his inspiration came from a peaceful protest on Staten Island New York at Mac's Public House that had attained a large crowd. After attending this rally, he wanted to go to Washington as a spectator and it was his belief that he was documenting a piece of history.

Mr. Moncada arrived in Washington by bus with others around 8:15 to watch Trump's speech. He did not suit up for combat. He did not obscure his face. He was not armed. He did not yell at anyone, except for the individual previously noted inside Nancy Pelosi's office. He wore street clothes. He committed no violent actions during his time inside and outside the Capitol. He did not destroy anything. He listened to Trump's speech and was under the belief that Trump was going to lead them to the White House to peacefully protest the election. At the time, he along with many others were following the former President of the United States and he did not believe that there was anything wrong in doing this. When he arrived at the Capitol, he observed people going into the building and he began to follow them and film what he believed at the time would be a historic moment (he was not incorrect). He has described it to me as surreal. While in the building he is crushed by protesters, loses his phone and is saved by a guard who pulls him out of the way. The same guard then escorted him out of the Capitol. He

borrowed a phone from a reporter from a Georgia newspaper and called his mother to come and get him. His mother was able to triangulate his phone with an app and recovered it the next day. He now stands before the Court again, remorseful of his actions, and asks this Court to exercise grace and compassion in the sentence the Court must give.

## II. LEGAL STANDARD

Section 3553 of Title 18 of the United States Code enumerates certain factors a district court is to consider when sentencing a defendant who has been convicted of a federal offense. Primarily, the court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a)(1). The court shall also consider the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, and provide just punishment; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id.* at § 3553(a)(2) (A-D). Section 3553(a) further sets forth the factors that the Court must consider in fulfilling this provision:

1. The nature and circumstances of the offense and the history and characteristics of the defendant.
2. The need for the sentence imposed.
3. The kinds of sentences available.
4. The kinds of sentence and the sentencing range.
5. Any pertinent policy statements issued by the Sentencing Commission.
6. The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
7. The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1-7).

## III. FACTORS CONSIDERED PURSUANT TO 18 U.S.C. §3553(a)

At sentencing, a district court must impose a sentence that is "sufficient, but not greater than necessary" in light of the factors identified in §3553(a). *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010), *citing Kimbrough v. United States*, 552 U.S. 85, 111 (2007) (quoting §3553(a)).

### A. Nature & Circumstances of the Offense & the History and Characteristics of Nicolas Moncada

First, the defense is not aware of any evidence that defendant's entry into the Capitol was violent in any way. His intention that day was to watch and record the events set in Motion by Trump. Second, Mr. Moncada did not engage with others while parading in the Capitol. For example, he didn't chant "whose house, our house" or "USA, USA" like literally thousands of other protesters. Third, there is no evidence that he engaged in any violence or questionable conduct towards law enforcement. Mr. Moncada was actually happy that a guard had found him after being trampled and relieved to be escorted out. Fourth, the defense is not aware of any evidence that he destroyed or stole any property from the Capitol. Fifth, based on the Government's investigation, it appears that he remained in the Capitol building for a limited period of time. The defense is not aware of any evidence that he entered any rooms or offices in the Capitol, any personal space or the Senate or House Chamber, other than the office of Nancy Pelosi.

The government concedes that he committed no violent acts and destroyed no property. His actions within the Capitol have been tracked on the CCTV footage and this demonstrates that while unlawfully present in the Capitol with no excuse, he did not destroy property, steal property or commit violent acts. His demeanor to police officers was non-confrontational and respectful.

5

Prior to this incident, Mr. Moncada was enrolled in the Fashion Institute of Technology and seeking a degree in graphic design. He was employed at a pizzeria as a delivery/counter person and sometimes pizza maker. He lived in his grandparents' home with his mother. His father was not involved in his life and continues to not be involved in his life. He lost all his friends and was actually reported to the FBI by some of his classmates that saw his live stream of the incident. Although recognizing his conduct was wrong and illegal, he will never get over the day he was arrested and incarcerated. He has repeatedly been threatened on social media sites. He pled guilty immediately after an agreement was reached without the need for lengthy motion practice or litigation, thus saving valuable judicial resources. It is of utmost importance to Mr. Moncada that this Court understands that he is incredibly remorseful for his actions on January 6, 2021. None of his actions will be erased from the internet. It's there forever. He has fully accepted responsibility for his bad judgement in entering the Capitol building and live streaming the events as they unfolded. His personal character and reputation will forever be tarnished. He has hope that he can continue his studies and is currently enrolled in The College of Staten Island. He is majoring in Psychology. He has also left the pizza business and is now working full time for The Grace Foundation as a counselor. The Grace Foundation is a Non-Profit School for people with Autism.

Mr. Moncada does not seek to minimize the harm caused by his behavior by the explanations in this sentencing memo. Nonetheless, in determining what punishment is warranted, this Court should not lose sight that he did no harm, intended no harm, and regrets that he was even there. He has the support of some of his family. His law abiding past, and his post arrest behavior show that he is capable of being a very productive citizen and the Court can rely on that as a basis to sentence him to time served considering the 3553 factors.

**Family and Friends**

Mr. Moncada has attached all the character and support letters to this memorandum. (See Exhibit A attached). However, to provide the court with a true and compelling picture of Mr. Moncada's character, he shares certain comments by them below.

Leanne Rosenthal is Mr. Moncada's aunt and one of his primary caregivers as he was raised by a single mother. Ms. Rosenthal states that Nicolas came into their lives as if he was their very own since they had no children, he is kind, caring and sensitive, also very helpful in taking care of his nieces, grandmother and mother.

Richard Delluomo is Mr. Moncada's Judo instructor. Mr. Delluomo states "He attends class consistently and always comes ready." "He is also helpful and respectful to the other students".

Carmine DiFrancesca is Mr. Moncada's uncle and godfather. Mr. DiFrancesca states, "He is very affectionate to his family. I've witnessed his kindness and generosity with his friends..." "He is intelligent, artistic, and doesn't have a mean bone in his body".

Joan Moncada, who is Nicolas' mother and has had significant health issues states, "he cares for me. I have suffered from depression over the years, but his smiling face pulls me through each day. He is my best friend. He comes down every night to tuck me in. I suffer from osteoarthritis and bone spurs and he helps me climb stairs and hold my arms when we have to walk any distance".

These along with a myriad of other letters show a very varying person always willing to help and aid others who need his help. He is respectful and, if not for this one error in judgement, had a very bright future ahead of him.

## B. Need for the Sentence imposed.

1. **General deterrence – 18 U.S.C. § 3553(a)(2)(B) – to adequately deter others from criminal conduct.**

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, there appears to be no need for incapacitation, specific deterrence, or rehabilitation. He has already been severely punished as noted *supra*. The public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for those involved. Those who would not be deterred by these consequences are likely not deterrable. And a sentence that leaves a person unable to do his work when other reasonable alternatives exist would not promote respect for the law. Indeed, unnecessarily harsh sentences imposed upon those who were less culpable will not encourage respect for the law or promote just punishment, but are likely to be counterproductive, and labeled as political posturing. A sentence of time served does constitute punishment and it will deter others as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms. He has been on pretrial release for over 2 years with many restrictions. The National Institute of Justice, Department of Justice, issued a summary of the current state of empirical research stating that "prison sentences are unlikely to deter future crime," and "increasing the severity of punishment does little to deter crime." U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. of Justice, *Five Things to Know About Deterrence* (July 2014) (relying on Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Justice in America 199 (2013)), available at https://ncjrs.gov/pdffiles1/njj/247350.pdf.

## 2. Specific deterrence – 18 U.S.C. § 3553(a)(2)(C) – to protect the public from further crimes of the defendant.

Mr. Moncada's likelihood of recidivism is non-existent. He has expressed genuine remorse and contrition and accepted the first plea offer tendered with no hesitation. His acceptance of responsibility was complete and without reservation. Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing,* 34 Crime & Just. 1, 28 (2006)" Three National Academy of Science panels... reached that conclusion, as has every major survey of evidence." *Id.*; *See also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and Sentence Severity: An Analysis of Recent Research (1999),* summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European Countries. *Id.* at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id.* While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates...were not sufficient to achieve statistical significance." *Id.* at 2. The report concluded that the "studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id.* at 1. Given Dr. Gold's current age and other issues consistent with what is mentioned above, the likelihood that he would ever re-offend is as close to zero as one might come. A punishment of any jail time in this case is going to have the exact opposite effect than what is in the interest of justice. The alternatives to incarceration make financial sense, conserve bed space for individuals from which society would need greater protection and would serve the

9

ends of justice. Mr. Moncada urges the Court impose a sentence of time served in this case in light of his bright future as a Psychologist, his sincere and complete remorse, his non-violent conduct at the Capitol, and his early and consistent acceptance of responsibility, and the lack of a need to further deter him.

## C. The kinds of sentences available

The sentencing guidelines do not apply in this case with a range of 0-6 months. A sentence of additional incarceration would result in sentencing disparity with other individuals who were similarly charged and behaved similarly. *See infra*.[1]

Mr. Moncada respectfully asks that the Court impose a sentence of time served combined with the restitution agreed upon by the Government. This would be particularly appropriate given his desire to continue his education and the harsh punishment any additional custodial sentence would impose by potentially causing him to drop out of school once again.

Imposition of a fine is discretionary, and, defendant respectfully submits should not be ordered in this case, since he is basically unemployed and will be paying restitution. Defendant's financial condition is non-existent as outlined in the PSR and he respectfully submits that he cannot pay any significant fine. *See* PSR, paragraphs 47, 48 and 51.

## D. The need to avoid unwarranted sentence disparities

If this Court were to impose a sentence greater than time served, and/or restitution, it would create an unwarranted sentencing disparity compared to similar cases that have already gone to sentencing in this Court. The following cases are a sampling where a class B misdemeanor was charged and pled to and resulted in no incarceration with facts that often were more egregious than Mr. Moncada's:

---

\*\**United States v. Anna Morgan-Lloyd,* 21-cr-00164 (RCL) (Jun. 28, 2021) (sentenced to probation);
\*\**United States v. Danielle Doyle*, 21-cr-00324 (TNM)(Oct. 1, 2021) (sentenced to probation even though she entered through a broken window and yelled at police officers);
\*\**United States v. Valerie Ehrke*, 21-cr-00097 (PLF) (Sept. 17, 2021) (sentenced to probation);
\*\**United States v. Jessica Bustle and Joshua Bustle,* 21-cr-00238 (TFH), ECF Nos. 42 & 44 (sentenced to supervised release with home confinement even though Ms. Bustle 1) posted on social media that Mike Pence was a traitor, 2) denied media accounts of violence were accurate, minimized the conduct of all of the rioters, 3) called for a revolution even after the events of January 6, 4) encouraged the rioters to be proud of their actions, and 5) minimized the impact of that day on lawmakers and democracy. *See United States v. Jessica and Joshua Bustle*, 21-00238 (TFH). Judge Hogan imposed a probationary sentence with a short period of home confinement for Ms. Bustle and an even shorter period of home confinement for Mr. Bustle. The government recommended probation in this case.
\*\**United States v. Andrew Bennett,* Crim. No. 21-227 (JEB)(sentenced to three months home confinement and two years probation). According to the government, who recommended probation with a short term of home confinement, Mr. Bennett espoused conspiracy theories about the election, was an admirer, albeit not a member of the Proud Boys, and boasted about his conduct. According to the government, Mr. Bennett did not come to the rally in D.C. on a whim, but rather planned it for months. He posted numerous times about conspiracy theories and fraudulent elections. On January 4, 2021, he posted to his Facebook page, "You better be ready chaos is coming and I will be in DC on 1/6/2021 fighting for my freedom!". On January 6, according to the government, Bennet began livestreaming video to his Facebook page from outside the Capitol as early as 1:00 p.m. He was in the middle of the growing crowd on the West Front of the Capitol, where some taunted police officers and sporadically threw objects at them. The government alleges that someone near Bennett exhorted others to "move forward" and that Bennett yelled at a police officer. Bennett also filmed assaults on the police officers and continued to livestream events inside the building.

None of this is to suggest that Mr. Bennett should have received a sentence of incarceration, only to suggest that the distinctions the government draws are hard to justify. Comparatively, Mr. Moncada's conduct would justify a sentence of incarceration and such disparate treatment. The courts have sentenced some January 6 misdemeanor cases to incarceration, but the nature and circumstances of those offenses, as well as the history and characteristics of the defendants in those cases, can be distinguished.

The following cases are a sampling where a class A misdemeanor was charged and pled to and resulted in no incarceration:

11

\*\**United States v. Brian McCreary,* 21-cr-00125 (BAH) (sentenced to 3 months home detention);
\*\**United States v. Jeffrey Witcher* 21-cr-00235(RC)(sentenced to 12 months probation); and
\*\**United States v. Felipe Marquez,* 21-cr-00136 (RC) (sentenced to 3 months home detention);
\*\**United States v. Jenny Louise Cudd,* 21-cr-00068 (TFM) (sentenced to 2 months probation)(defendant wore a bullet proof sweatshirt, engaged in a push against law enforcement officers while yell "go" and "charge" and celebrated property destruction and lacked remorse) *See* ECF 90.

In the following cases the defendants were given short sentences of incarceration by this Court, but their behavior was much worse than Mr. Moncada's:

\*\**United States v. Jennifer Ryan* 21-cr-00050(CRC)(sentenced to 2 months incarceration)(the defendant posted and live streamed her activity; she was "publicly cheerleading on a violent attack"(*See* ECF 48); she said the events were "a prelude to war" she shouted "fight for Trump" and "Hang Mike Pence"; she tweeted a photograph of a broken window that encouraged additional violence and she had no remorse;
\*\**United States v. Anthony Scirica,* 21-cr-000457 (CRC) (sentenced to 15 days incarceration). Here, remarkably, the defense agreed with the government's 15 day recommendation of incarceration. The defendant was not remorseful, close to chamber where vote took place, close to police line, chanted USA at police, and directed the crowd inside the capitol. He also took photos and video of himself. *See* ECF 17.
\*\**United States v. Gracyn Courtright,* 21-cr-00072 (CRC) (sentenced to 30 days incarceration)(the defendant went onto the Senate floor; picked up a "members only" sign and only returned it because an officer ordered her to; posted on social media that showed a complete lack of remorse; and chanted at a line of police officers "whose house, our house and USA, USA.").

All told, the facts of the offense's conduct and characteristics of the defendants who garnered incarceration were starkly different than Mr. Moncada's conduct and characteristics. Mr. Moncada's actions fall on the lowest end of the spectrum that day and his culpability appear to be minimal in contrast with rioters who posted hateful messages, destroyed, or stole government property and assaulted or threatened the law enforcement officers on that date. He has been incapacitated by these events, yet he remains optimistic and holds our legal and democratic processes in the highest regard.

## IV. CONCLUSION

Considering all the applicable factors the Court will consider, Mr. Moncada respectfully moves this court to impose a sentence of time served. This sentence is "sufficient but not greater than necessary" as required by 18 U.S.C. §3553(a). It would be a sentence in the best tradition of federal judicial discretion, that would consider Mr. Moncada as an individual and account for his unique failings and youthful immaturity positive attributes that, in the words of Justice Kennedy "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Rita v. United States*, 551 U.S. at 364, (Stevens, J. concurring), *citing Koon v. United States*, 116 S.Ct. 2053 (1996).

Dated: October 30, 2023

Respectfully submitted,

Mario F. Gallucci, Esq. (NYS Bar #2421287)
The Gallucci Law Firm
1110 South Avenue, Suite 29
Staten Island, NY 10314
Telephone: (347) 273-1269
Email: mario@galluccilawfirm.com
mfg7102@aol.com

## CERTIFICATE OF SERVICE

I hereby certify on the 30th day of October, 2023 a copy of the same was electronically filed using the CM/ECF system and thus delivered to the parties of record and in pursuant to the rules of the Clerk of the Court.

Dated: October 30, 2023

　　　　　　　　　　　　　　　　　　　　　　　　／s／ Mario F. Gallucci