UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 22-CR-366 (CRC) |
| | : | |
| v. | : | |
| | : | |
| NICOLAS ANTHONY MONCADA, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Nicolas Anthony Moncada to 14 days of intermittent confinement as a condition of 36 months of probation, 60 hours of community service, and $500 in restitution.

**I.      Introduction**

Defendant Nicolas Anthony Moncada, a 23-year-old man who works at a pizzeria on Staten Island, New York, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department (MPD) also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

1

Moncada pleaded guilty to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence 14 days of intermittent confinement as a condition of 36-month probation, is appropriate in this case because Moncada: (1) ignored fencing and "AREA CLOSED" signs, witnessed rioters screaming at the police, but still entered the U.S. Capitol Building; (2) took several photos while inside; and (3) made statements after January 6 celebrating his unlawful conduct.

The Court must consider that Moncada's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances of Moncada's crime support the recommended sentence.

## II.    Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 35 (Statement of Offense), at 1-7.

*Defendant Moncada's Role in the January 6, 2021 Attack on the Capitol*

Moncada came to Washington, D.C., from New York on or about January 6 to attend the "Stop the Steal" rally. On January 6, he attended the rally and then marched to the Capitol. After arriving at the Capitol, Moncada walked inside the Capitol, where he took several photos and/or videos of himself and others. On January 6, Moncada posted on Instagram a video taken inside the Capitol during the mob's assault on the building. Moncada captioned the video "Nothing to see here Instagram!" The video shows rioters screaming at the U.S. Capitol Police Officers. In response to the video that Moncada posted, an individual on the social media account asked

Moncada "what is going on." Moncada responded in the comment: "Storming the Capitol Building." Also, on January 6, 2021, Moncada posted on his Instagram account a photograph of himself captioned "Outside Pelosi's office," in reference to the Office of Speaker of the House Nancy Pelosi. *See* Figure 1, below.



*Figure 1*

*Moncada's Social Media Accounts*

On January 8, 2021, FBI agents in New York executed search warrants on Moncada's social media accounts. Moncada posted on his Instagram account a video of the scaffolding outside the Capitol on January 6, 2021, which showed police officers standing on the Capitol steps.

In a separate video, Moncada posted what appeared to be blood on the steps of the Capitol. Screen shots captures of those videos are in Figures 2 and 3, below:



*Figure 2*



*Figure 3*

During the riot, an individual on Moncada's Instagram account asked Moncada "what is going on." Moncada responded, "Storming the Capitol Building." *See* Figure 4 below:



*Figure 4*

*The Charges and Plea Agreement*

On January 16, 2021, the government charged Moncada by Complaint with Knowingly Entering and Remaining in Any Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) and (2), and Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(A) and (C). On November 14, 2022, the government filed a one-count Information charging Moncada with Parading, Demonstrating or Picketing in Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). On February 22, 2023, the defendant pled guilty to Count One of the Information pursuant to a written plea agreement.

### III. Statutory Penalties

Moncada now faces sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Moncada faces up to six months of imprisonment and a fine of up to $5,000. Moncada must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79

(D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

IV.     **Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. As described below, the Section 3553(a) factors weigh in favor of 14 days of intermittent confinement as a condition of 36 month probation, , 60 hours of community service, and $500 in restitution.

A. **The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Moncada's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Moncada, the absence of violent or destructive acts is not a mitigating factor. Had Moncada engaged in such conduct, he would have faced additional criminal charges.

As set out above, Moncada – after he had seen rioters screaming at the police – an individual on the social media account asked Moncada "what is going on." Moncada responded in the comment: "Storming the Capitol Building." Also, on or about January 6, 2021, Moncada posted on his Instagram account a photograph of himself captioned "Outside Pelosi's office," in reference to the Office of Speaker of the House Nancy Pelosi.

7

Moncada's messages after his entrance into the U.S. Capitol are noteworthy because they showed that he did not feel any remorse for his actions that day but instead celebrated his unlawful entry into the Capitol. Accordingly, the nature and the circumstances of this offense establish the clear need for the recommended sentence.

### B. The History and Characteristics of Moncada

As set forth in the PSR, Moncada had a "happy" childhood and grew up in a stable home with his mother and grandparents. He played school sports through junior high and participated in ROTC for 3 ½ years in high school. He graduated from high school in 2018 with a 94.36% average, 48th out of 600 students. He studied at the Fashion Institute of Technology in Manhattan until 2020. ECF 41 ¶¶ 29-37, 45.  Moncada has no prior criminal record. ECF 41 ¶¶ 21-22.  Despite these positive factors, Moncada decided to travel to Washington, D.C., joined the riotous mob and entered the Capitol, and got to the sensitive space near the office of the Speaker of the House.  Of greater concern is the fact that to date, Moncada has not expressed any remorse.[2]

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the Capitol was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy

---

[2] During his presentence investigation interview, Moncada told the Probation Officer, "I accept the responsibility for entering the Capitol on January 6, 2021.  I paraded and picketed." ECF 41, ¶ 18. While this statement evinces acceptance of responsibility, neither Moncada's guilty plea nor this statement is an expression of remorse.

itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.  There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Moncada did not accept the results of the 2020 presidential election, so on January 6 he invaded the Capitol.  With the 2024 presidential election approaching, a rematch on the horizon, and many loud voices in the media and online continuing to sow discord and distrust, the potential for a repeat of January 6 looms ominously. The Court must sentence Moncada in a manner sufficient to deter him specifically, and others generally, from going down that road again.

Despite his obvious awareness that the crowd had devolved into a riot, Moncada did not turn around and leave. Instead, he entered the Capitol building and took several photos and posted messages on his social media. Moncada participated in the attack on our democracy and the recommended sentence will provide the specific deterrence needed to ensure he does not commit similar crimes in the future.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This Court must sentence Moncada based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his/her participation in the January 6 riot.

Moncada has pleaded guilty to Count One of the Information, charging him with a violation 0f 40 U.S.C. § 5104(e)(2)(G). This offense is a Class A/B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." "Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006).

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272

11

(TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr. at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson).

Although the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Sean David Watson*, 21-CR-422-APM, the defendant entered the Capitol through the Senate Wing Doors after witnessing other rioters push past police and go

12

inside. Watson remained in the building for 35 minutes and made statements to others, including a reporter, that he was proud of his actions on January 6. Watson also deleted videos from his phone. Watson pleaded guilty to a violation of 40 U.S.C. § 5104(e)(2)(G) and the court sentenced him to 24 months' probation to include 7 days' incarceration.

In *United States v. Paul Von Bernewtiz*, 21-CR-307-CRC, the defendant was among the crowd who initially breached the barriers on the West Front. Von Bernewtiz entered the building despite observing flashbangs, experiencing the deployment of tear gas and witnessing violence against the police. Von Bernewtiz remained inside the Capitol building for approximately 14 minutes and minimized his involvement to the FBI in subsequent interviews. Von Bernewtiz pleaded guilty to a violation of 40 U.S.C. § 5104(e)(2)(G), and this Court sentenced him to one month of incarceration.

In *United States v. Janet Buhler*, 21-CR-510-CKK, the defendant heard flashbangs and saw smoke before she entered the U.S. Capitol building, where she remained for 28 minutes. Buhler also deleted videos and photos from inside the building. Buhler pleaded guilty to a violation of 40 U.S.C. § 5104(e)(2)(G), and Judge Kollar-Kotelly sentenced her to one month of incarceration, to be followed by 36 months' probation.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v.*

*Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

V.      **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Moncada must pay $500 in restitution, which reflects in part

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," and any offense "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

the role Moncada played in the riot on January 6.[5] Plea Agreement, ECF 34, at ¶ 10. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,881,360.20" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of October 2022. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Moncada's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* ECF 41, PSR ¶ 71.

## VI.   Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Moncada to 14 days of intermittent confinement as a condition of 36 month probation, , 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

                                    Respectfully submitted,

                                    MATTHEW M. GRAVES
                                  United States Attorney
                                  D.C. Bar No. 481052

By:   */s/ Emory V. Cole*
        EMORY V. COLE, PA Bar No. 49136
        Assistant United States Attorney
        601 D Street N.W.
        Washington, D.C. 20530
        Emory.Cole@usdoj.gov
        (202) 252-7692

---

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).